PHILLIPS, PLAINTIFF IN ERROR, v. RHODES ET AL.,
DEFENDANTS IN ERROR.

1. CONSIDERATION—LOVE AND AFFECTION.

When the parties to a conveyance of real estate are husband and wife, love and affection may be a sufficient consideration between the parties, but it is not a good consideration, nor does the deed pass title when such result would be in fraud of existing creditors.

2. EVIDENCE—WHAT IS NOT.

The mere fact that the property was purchased at execution sale by the creditors for less than its estimated value, is not evidence of a conspiracy to deprive the plaintiff of her rights therein.

3. ATTORNEY AND CLIENT.

A client cannot maintain an action against her attorneys for alleged fraud in securing a compromise of a disputed claim, when it appears that but for the close attention of her counsel she would have received nothing, and that she agreed to the settlement after consultation with her father, even though she was a minor at the time.

*Error to the District Court of Arapahoe County.*

Mr. L. WALKER, for plaintiff in error.

Messrs. MARSH, VOORHEES & MARSH, Mr. H. E. LUTHE and Mr. W. W. COOKE, for defendants in error.

This was a suit in equity brought by plaintiff against L. R. Rhodes, George A. Corbin, James Guard, Ernest Bauman, W. V. Cook and Lizzie A. Cook to recover certain city lots and buildings upon them, and to have sundry conveyances canceled. Plaintiff in September, 1884, at about the age of fourteen years married the defendant, Ernest Bauman. At the time of such marriage Bauman was indebted to certain individuals, among whom was one Alexander V. Sherrer, the defendant, James Guard, and his partner, Albert A. Kneeland, as Guard & Kneeland. Plaintiff at the time of her marriage had no individual property, and came into the possession of none while living with Bauman as his wife.

In February, 1885, Bauman, with his own money bought the property in controversy and had the conveyance made to plaintiff. In November, 1885, Bauman required and induced plaintiff to convey the property to his mother, Marie C. Bauman. No consideration passed save $2, which was immediately returned. In June, 1885, Marie C. Bauman, without consideration, conveyed the property to plaintiff's husband, Ernest Bauman, and in August, 1887, Ernest Bauman, without consideration, conveyed the property to his brother, Gustave Bauman.

In March, 1885, Guard and Kneeland commenced suit against Ernest Bauman to collect the amount of money due to them, and shortly after obtained judgment for the sum of $883.72 and costs. In July, 1886, Alexander V. Sherrer instituted suit, and in September following obtained judgment for $583 and costs. Upon both judgments executions were issued which were levied upon the property in controversy. Upon sale under such executions the right, title and interest of Ernest Bauman in the property was sold and purchased by James Guard and Sherrer. Subsequently the sale under execution was vacated and the decree amended requiring Ernest Bauman to pay the amount of such judgments within ninety days, and in default of payment, property to be sold in satisfaction of the judgments. Default was made by Ernest Bauman in payment, and some time during the year 1886 (date not given) the property was again sold and again purchased by Guard and Sherrer.

Some time prior to October, 1888 (date not given) plaintiff instituted proceedings for divorce against her husband, Ernest Bauman; at such date the suit was still pending and undetermined. The defendants, Rhodes and Corbin were partners, or together interested in the practice of law as attorneys. Plaintiff applied to defendant, Rhodes, to employ him to assist one McCord, her former attorney, in the prosecution of the suit for divorce, and to assert whatever rights she might have to the property, and Rhodes accepted such employment. Subsequently plaintiff succeeded in her suit for

divorce and the decree was entered. It appears that such litigation and adjudication ·did not embrace the property rights of plaintiff; no alimony granted, and the rights, if any, of plaintiff were left to be determined by a subsequent suit to enforce her supposed rights against the property. The plaintiff being at the time of her marriage a minor of about fourteen years of age, arrived at her majority about the time or shortly subsequent to the decree of divorce, consequently, all the proceedings narrated occurred during her minority, between the date of her marriage and attaining her majority.

The defendant, Rhodes, deeming it necessary to disavow the acts of the plaintiff during her minority, including the conveyance by her made to her mother-in-law, Marie C. Bauman, required her to reconvey the property, suggesting defendant, Corbin, as the proper person to whom the conveyance should be made. She, acting upon such counsel or requirement, made conveyance of the entire property in controversy to the defendant, Corbin, such conveyance having been made without consideration and solely, as shown, for the purposes of disavowal.

It is alleged that at that time the property in controversy was worth between $12,000 and $14,000. The legal title, by former conveyances, was vested in Gustave Bauman as before stated. The statutory time for redemption from the sales under execution against Ernest Bauman had not expired. The amount necessary to redeem from such sales was between $3,000 and $4,000.

Plaintiff by herself and her father (guardian *ad litem*) attempted to raise the money necessary to redeem from the sales under the execution, but failed.

The defendant, W. W. Cook, was the attorney of James Guard, who held whatever title was conveyed by virtue of execution sales, and was entitled to the amount of money paid if the property was redeemed. While matters were in this condition Guard became willing and desirous of perfecting his title to the property by compromise and the purchase of the supposed outstanding equities of plaintiff; Ernest,

Bauman and Gustave Bauman, and through his attorney and agents entered into negotiations with the parties respectively.

Plaintiff was informed by Rhodes, her counsel, that he could obtain for her about $2,000 by settlement; advised that she accept. The amount was afterwards increased to $2,250, from which the counsel fee of Rhodes and Corbin amounting to $500 was to be paid, leaving plaintiff the sum of $1,750. After consultation with her father it was concluded to accept the proposition.

The defendant, Corbin, conveyed or quitclaimed to James Guard whatever title or interest he had in the property by virtue of the conveyance to him from the plaintiff. About the same time Gustave Bauman and Ernest Bauman conveyed and quitclaimed their supposed interests to Guard. Including the purchase price of the property under the execution, after purchase of the supposed interest as above stated, the property represented a cost to Guard of about $7,000.

Lizzie A. Cook, defendant, was the wife of W. W. Cook. At some indefinite time during the proceedings narrated, she became the purchaser of two of the lots in controversy. Subsequent to all these proceedings, plaintiff being dissatisfied with results, instituted this suit to recover the entire property or its value, making all the parties named defendants, alleging that defendants, taking unlawful advantage of her minority and want of business knowledge, had entered into a conspiracy to defraud her, acquire the property and distribute its value in some manner among themselves, alleging bad faith and an utter disregard of professional duty in her attorney, Rhodes; also, imputing dishonesty to defendant, Corbin, in furtherance of a preconceived conspiracy and intention to defraud her, and alleging that the conveyance made by Corbin to Guard was without her knowledge or consent and in fraud of her rights. Plaintiff prays that all conveyances heretofore made be deemed to be void and of no effect, and that James Guard and Lizzie A. Cook be compelled by decree to convey to her the property in controversy freed of all

incumbrance, to deliver the possession of the property to her, and account for the use and occupation during the entire time they have been in possession.

Defendants, Rhodes, Corbin, Guard, W. W. and Lizzie A. Cook answered, the first two by separate answers, the last three jointly, denying the allegations of the complaint, denying and disavowing all confederacy and joint action, and setting up the facts as above stated. Replications were filed to the respective answers and an extended trial had, a large mass of testimony introduced. The court found for the defendants and a decree entered to such effect, and that they recover their costs from the plaintiff and have execution for the same.

REED, J., after stating the facts as above, delivered the opinion of the court.

The decree of the district court must be affirmed. The suit should never have been instituted. If instituted upon erroneous information, it should have ended with the decree of the court below. There was an utter failure, by evidence, to establish any fact necessary to entitle plaintiff to the relief asked, or any other relief. As it is, we are compelled to wade through 272 pages of printed abstract, of which 48 are pleadings, and balance an *abstract* ( ? ) of evidence, a large part of which was irrelevant—not calculated to establish any fact in issue or any fact of interest in any way pertaining to the assertion of the supposed rights.

Plaintiff was married before she was fourteen years old— had no money or individual property. Before she was fifteen, her husband, with his own money, purchased the property in controversy and had the conveyance made to his wife. At the time of such purchase he was indebted, owing the debts that were subsequently asserted against the property. Conceding that the relation of husband and wife, and "love and affection," are a sufficient consideration, *inter parties ;* it is not a good consideration, nor does the conveyance carry

title when in fraud of the rights of existing creditors. What plaintiff took, if anything, was the equity remaining after the debts were discharged. In our view of the case, the minority of plaintiff, her conveyance to her mother-in-law, the conveyance by the mother-in-law to the husband, and the husband to the brother, Gustave, may all be disregarded as shifts on the part of the husband to prevent the property's being subjected to the payment of debts. The questions in regard to disagreement, separation, subsequent divorce, alimony, etc., may also be eliminated. The legal result would have been the same had husband and wife continued together in the utmost harmony and earthly felicity—unless the combined efforts of husband, mother-in-law and brother-in-law could have been sufficient to defeat the collection of debts—whether individual force, wasted in different directions, prevented its accomplishment, we cannot determine. This eliminates from the discussion all acts and conduct of the plaintiff before attaining her majority, and brings us to her conveyance to Corbin. It was a voluntary conveyance without consideration, deemed necessary to be made in her interest. It made Corbin her trustee, nothing more; no undue influence is shown to have been exerted; she was fully informed of the object and intention and all necessary facts, and voluntarily made the conveyance. No evidence is introduced tending to show any conspiracy with others, or any want of good faith in the execution of the trust, or that he made a dollar out of it.

The property having been sold under the executions, plaintiff and her father made an unsuccessful effort to obtain the money to redeem. In order to realize, if possible, something from the property, negotiations were entered into by plaintiff, Gustave and Ernest Bauman, each individually, through their respective agents and counsel, with Guard, to compromise matters, resulting in Guard's buying the supposed rights and interests of the three parties. Gustave and Ernest each received an agreed sum and quitclaimed to Guard. Plaintiff and her father had an interview with their

counsel, Rhodes and Corbin, the offer from Guard of $2,000 submitted, which was temporarily declined while an effort was made to secure more, which resulted in an offer of $2,250, which was accepted; $1,750 paid to and received by plaintiff in full for her claim, and $500 retained by counsel for services. The interest or claim of plaintiff was conveyed by Corbin, who held the legal title.

It is clear from the evidence that the matter was fully understood and agreed to by the plaintiff. It is equally clear, that had not such result been reached by the close attention of counsel to her interests, nothing would have been obtained.

The whole cost to Guard being something less than the estimated value, defendants are charged with having conspired with each other and having directed their united efforts to defrauding her and acquiring the property for less than value, and the settlement on the part of the plaintiff is ignored. There was no evidence whatever of conspiracy or a concerted action by the others to make her a victim. Each appears to have worked individually to accomplish a purpose, Ernest, and Gustave Bauman and plaintiff being successful.

The decree should be sustained.

*Affirmed.*